Perez v Baez (2024 NY Slip Op 50717(U))

[*1]

Perez v Baez

2024 NY Slip Op 50717(U)

Decided on June 12, 2024

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 12, 2024
Supreme Court, Kings County

Amalia Perez, as Administratrix of the Estate of Moises Perez, Deceased, Plaintiff,

against
Daysi Baez, M.D., Forest Hills Hospital and Sergio Martinez, M.D., Defendants.

Index No. 508880/2016

Plaintiff
Robert J. Genis, Esq. 
Sonin & Genis Attorneys At Law, LLC
One Fordham Plaza, Suite 907
Bronx, NY 10458
718-561-4444
Defendant Daysi Baez, M.D.
David Todd Verschell, Esq.
Abrams Fensterman, LLP
3 Dakota Dr, Ste 300
New Hyde Park, NY 11042
516-328-2300
Defendant Forest Hills Hospital
Tracy Katz, Esq. Furman Kornfeld & Brennan LLP
88 Pine St, Fl 32
New York, NY 10005
201-655-3418
Defendant Sergio Martinez, M.D.
Mark Khavkin, Esq. 
Shaub, Amuty, Citrin & Spratt LLP 1983 Marcus Avenue
Lake Success, NY 11042
516-326-7153

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: 98-132, 137-149; 177-204, 208-226; 228-234; 257-263; 272-273; 304-305; 308-326; 329-330
Defendant Sergio Martinez, M.D. ("Dr. Martinez") moves (Seq. No. 11) for an Order, pursuant to CPLR 3212, granting summary judgment in his favor and dismissing Plaintiff's complaint against him in its entirety, or granting summary judgment on any claim and/or theory of liability asserted against him.
Defendant Forest Hill Hospital ("FHH" or "the hospital") separately moves (Seq. No. 13) for an Order, pursuant to CPLR 2221 and CPLR 3212, renewing FHH's prior motion for summary judgment and upon renewal, granting summary judgment in the movant's favor on the issues of liability and proximate causation, and dismissing Plaintiff's complaint against them.
Plaintiff opposes the motions with respect to both defendants.
This is the third summary judgment motion from each defendant, a fact which must be explained briefly by this action's procedural history. Plaintiff Amalia Perez commenced this action on May 26, 2016, as administrator of the estate of Moises Perez ("Decedent") asserting claims of medical malpractice against Dr. Martinez, FHH, and non-moving co-defendant Daysi Baez, M.D. ("Dr. Baez"). The allegations against Dr. Martinez and FHH herein relate to treatment rendered in July-August 2013.
Defendants Dr. Martinez and FHH moved to dismiss the 2013 claims as time-barred by the statute of limitations (Seq. No. 2 & 3). In an Order dated August 20, 2018, the formerly assigned justice granted both motions. While that decision was pending appeal, Dr. Martinez and FHH also moved for summary judgment on the merits (Seq. No. 6 & 7), as to the 2013 claims and any claims related to subsequent 2015 treatment. In an Order dated August 6, 2019, the action was dismissed against Dr. Martinez and FHH in its entirety. The formerly assigned justice noted that the 2013 claims had already been dismissed on statute of limitations grounds, and gave the defendants leave to renew their summary judgment motions as to those claims if they were reinstated by the Appellate Division.
On July 29, 2020, the Second Department reversed the court's dismissal of the 2013 claims against Dr. Martinez and FHH, holding that Decedent's August 2015 death tolled the statute of limitations (Perez v Baez, 185 AD3d 1062 [2d Dept 2020]). Dr. Martinez and FHH renewed their motions for summary judgment (Seq. No. 9 & 10), as permitted in the Court's prior decision. Plaintiff opposed those motions on the basis of outstanding discovery. In an Order dated May 16, 2023, the former assigned justice denied both motions without prejudice to renew after the competition of pretrial depositions of Dr. Martinez (completed September 13, 2023) and Decedent's bedside nurse, Ashley Simpson ("RN Simpson", completed September 19, 2023). To this date, the defendants' summary judgment motions as to the 2013 claims have not been considered by a court on their merits.
Now, both defendants seek to renew their summary judgment motions within 60 days of completion of the outstanding depositions, with permission as set forth in the prior decision and order. There is no objection from Plaintiff that the records and expert affirmations from the prior [*2]motions form the basis of defendants' present motions in addition to newly submitted expert affirmations and the recent depositions. The former assigned justice has recused herself from this matter in the interim, and the case and motions were reassigned to the undersigned justice.
Decedent presented to the emergency room of Forest Hills Hospital on July 30, 2013 with a chief diagnosis of hyponatremia (low sodium in blood) and symptoms including confusion and forgetfulness. A chest CT scan after admission revealed a spiculated mass in the left lobe of his lung, measuring 1.9 cm x 2.7 cm x 3.7 cm, suspected to be carcinoma or a reactivated infection.
Dr. Martinez was assigned as pulmonary consult/specialist while Decedent was admitted to the hospital. He examined Decedent and performed an endoscopic biopsy/bronchoscopy on August 1, 2013. Decedent's spouse and representative, Amalia Perez, testified that Dr. Martinez conveyed to them the "spot" on his lung was likely old tuberculosis exposure. Dr. Martinez disputes this conversation, but testified he did not make a diagnosis because the pathology results were still outstanding at the time of Decedent's discharge.
Decedent was discharged on August 2, 2013 with a diagnosis of hyponatremia, which had improved, and a "lung mass." RN Simpson testified that she provided Decedent with oral and written discharge instructions, which included a signed direction for the patient to make a follow-up appointment with Dr. Martinez in "1 week."
Dr. Martinez received the final pathology report of the biopsy after Decedent's discharge from FHH. The samples tested negative for cancer, but the report recommended "clinical correlation and possible rebiopsy if clinically feasible." Although the results were negative, Dr. Martinez's recent testimony indicated that he knew those results were not conclusive in ruling out cancer, due to his difficulty locating and obtaining a sample from the actual mass. Decedent never made a follow-up appointment with Dr. Martinez, and Decedent was not contacted by the hospital or Dr. Martinez.
On July 16, 2015, a CT scan revealed Decedent's lung mass had increased significantly, measuring 7.28 cm x 3.3 cm x 4.5 cm. Decedent was admitted again to FHH from July 23, 2015 to August 5, 2015. During this admission, he was diagnosed with stage four bronchogenic squamous cell carcinoma, which had also metastasized to his liver. He died approximately one month later on August 29, 2015.
Plaintiff alleges that Dr. Martinez and FHH departed from good and accepted medical standards in connection to Decedent's July-August 2013 treatment, and that these departures were a proximate cause of Decedent's injuries and death stemming from his delayed cancer diagnosis.
Generally, "[i]n determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (Stukas v Streiter, 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:
"The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of [*3]a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (Barnaman v Bishop Hucles Episcopal Nursing Home, 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].
In support of Dr. Martinez's renewed motion for summary judgment (Seq. No. 11), the movant submits a supplemental expert affirmation from Ian Newmark, M.D. ("Dr. Newmark") a licensed physician certified in internal medicine and pulmonary disease. The movant also refers to the previous expert affirmation of Dr. Newmark dated March 18, 2019 (NYSCEF Doc. No. 116), which was included in his prior motions for summary judgment.
Based on his review of the records and relevant expertise, Dr. Newmark opined in his initial affirmation that Dr. Martinez's treatment of Decedent during his FHH admission was in accordance with good and accepted medical practice. Dr. Newmark noted that Decedent's initial reason for admission was hyponatremia, a low blood sodium disorder.
Dr. Newmark notes that Decedent was discovered to have a spiculated mass on his CT scan, which could indicate carcinoma, tuberculosis, or fungal infection. Dr. Martinez was brought in as the pulmonary consult. Dr. Martinez's examination showed Decedent's lungs were clear to auscultation and he had no acute complaints of shortness of breath or other pulmonary symptoms. Dr. Martinez performed a bronchoscopy and obtained brushings and biopsy sample from the left upper lobe, and the specimens were submitted to pathology.
Dr. Newmark opined that Dr. Martinez fulfilled his duties under the standard of care by properly reviewing Decedent's medical history, lab work results, and radiographic studies, and forming a differential diagnosis. Dr. Newmark opined that Dr. Martinez appropriately performed a bronchoscopy, as it was unknown based on the CT scan whether the mass was cancerous. Dr. Newmark also opined that it is "not unusual" to have difficulty locating a mass, such as Decedent's, that is in the lung parenchyma, rather than in the airway accessed with a bronchoscope.
On August 2, Dr. Martinez examined Decedent again, and a plan was recorded in his chart to follow up with him on the bronchoscopy results, medications, and oxygen support, and "provide pulmonary function tests on an outpatient basis." The same day, Decedent was deemed stable for discharge and his hyponatremia had improved. Hospital records indicate that he was given discharge instructions to follow up with Dr. Martinez. Dr. Newmark opined that it was not Dr. Martinez's decision to discharge the patient, and regardless, there was no reason to keep Decedent hospitalized, and he was appropriately discharged with instructions to follow up with Dr. Martinez within the week.
Dr. Newmark opines that Dr. Martinez had no duty under the standard of care to call or contact Decedent for post-discharge follow-up, schedule a specific follow-up date, or "go chasing after the patient," even if he suspected cancer based on the bronchoscopy results. In the expert's opinion, Dr. Martinez complied with the extent of his obligation when he "instructed/directed decedent to follow up with him after the discharge and waited for decedent to come in."
Dr. Newmark acknowledges that the defendant "never told Decedent that he suspected cancer" but he opines that he did adequately communicate that he performed the bronchoscopy "to, among other things, rule out cancer." Again, this is based solely on the testimony of Dr. Martinez that he "told him [Decedent] there was a chance the mass could be malignant" before the bronchoscopy.
Dr. Newmark also opines that Dr. Martinez was qualified to assess whether the patient had cognitive deficits, and that he appropriately determined during his examination that Decedent understood all information and directives given to him, based on Dr. Martinez's testimony that he was "awake, alert, and oriented to time and space and place" (Dr. Martinez deposition tr, at 37-38). Dr. Newmark opines that the "forgetfulness" and "periods of confusion" noted on the patient's chart were symptoms of his initial diagnosis of hyponatremia, which had improved by the time of his discharge when his sodium levels were restored. Dr. Newmark bases this on the absence of nursing notes on the patient's confused/forgetful state, and the administrator's testimony that his mental function was "back to normal" after he was discharged (Amalia Perez deposition tr, at 160-161). Therefore, the expert opines that Dr. Martinez did not depart from the standard of care by not relaying information to his spouse/designated representative.
Dr. Newmark opines that, regardless of any factual dispute over whether Dr. Martinez told Plaintiff the "spot" on his lung could be tuberculosis, "the only way for Dr. Martinez to have departed on this issue was to have told the plaintiff and/or decedent to not follow up with him after the discharge." Dr. Newmark then states that Decedent was told "on numerous occasions to follow up with Dr. Martinez . . . to undergo pulmonary function tests related to his COPD, as well as to follow for the results of the bronchoscopy." However, Dr. Newmark bases this opinion on the discharge sheet which simply recommended a follow-up with Dr. Martinez in one week, and Dr. Martinez's own testimony that he told the Decedent to do so.
Dr. Newmark also opines, without detail, that Dr. Martinez's alleged departures were not a proximate cause of Decedent's injuries or death.
Claims for failure to properly perform the bronchoscopy and obtain proper tissue samples appear in Plaintiff's supplemental bill of particulars, which is the subject of a separate motion to strike and cross motion to amend (Seq. No. 14 & 15). Although they were raised by Plaintiff in oral argument, these claims were not addressed in Plaintiff's expert affirmation beyond a general assertion that Dr. Martinez "failed to make the proper diagnosis," and such claims regarding the bronchoscopy will not be considered herein. The motions regarding this supplemental bill of particulars are still pending before a justice in the discovery part.
Based on these submissions, the movant has failed to establish a prima facie case that the treatment rendered to Decedent by Dr. Martinez was within good and accepted medical standards. The expert's opinions on whether Dr. Martinez properly informed Decedent of his possible malignancy are wholly based on the doctor's own testimony that he "told [Decedent] there was a chance this mass could be malignant" before performing the bronchoscopy and "told him to follow up with me." However, none of the handwritten consult notes or progress notes cited in the record indicate what Dr. Martinez told Decedent about a potential cancer diagnosis (see NYSCEF Doc No. 196 at 90, 96, 98), and his statements are controverted by Plaintiff-administrator, who testified that the possibility of cancer was not mentioned during his 2013 admission. "Any conflicts in the testimony merely [raise] an issue of fact for the fact-finder to resolve" (see Palmiero v. Luchs, 202 AD3d 989, 992 [2d Dept. 2022], citing Lavi v. NYU Hosps. [*4]Ctr., 133 AD3d 830, 832 [2d Dept. 2015]). Further, Dr. Newmark's opinion that the doctor had no duty to "chase after" the patient is based on a faulty premise and assumption that Decedent made an intentional choice to refuse further treatment, contrary to Plaintiff's allegations that Decedent was not given sufficient information to arrange a follow-up appointment himself.
The expert also opines that Decedent no longer had impaired cognitive function during his interactions with Dr. Martinez based on the absence of nursing notes indicating confusion/forgetfulness after July 30. His opinion is also based on Dr. Martinez's recollection that Decedent was "awake and alert," which does not negate the periods of confusion and forgetfulness noted on his chart, nor does it provide clarity on his cognitive state at the time of his discharge. Dr. Martinez further testified that he made no other evaluation of his cognitive function or memory. The testimony from Plaintiff-administrator is also unclear and equivocal about Decedent's cognitive function when he interacted with Dr. Martinez; she testified only that he was "back to normal . . . after the five days when they discharged him." Thus, the expert's opinions are conclusory and unsupported by the record, based on inconsistencies which must be resolved by a trier of fact.
The expert's opinions on proximate causation are also conclusory and do not establish prima facie that the Decedent's claimed injuries and/or death would have occurred independently from Dr. Martinez's alleged departures. For these reasons alone, summary judgment must be denied.
Notwithstanding the above, Plaintiff submits an expert affirmation from a licensed physician certified in internal medicine and pulmonary disease, (name of expert redacted), in opposition to Dr. Martinez's motion. The Court was presented with the signed, unredacted affirmation for in camera inspection.[FN1]

Based on the record and his relevant expertise, Plaintiff's expert opines that Dr. Martinez departed from good and accepted medical standards. Specifically, the expert opines that Dr. Martinez failed to properly communicate with the Decedent and his spouse/representative that he may have cancer, and he failed to follow up with the patient for further testing and treatment.
The expert opines that because Decedent was discharged from FHH before a diagnosis was possible, Dr. Martinez had a duty under the standard of care to "call or write the patient or otherwise communicate . . . and schedule a specific appointment with a date, time, and location for Perez to come in to see Martinez or a specialist." Plaintiff's expert opines there was a clear possibility or likelihood of lung cancer from Decedent's CT scan and patient history, and Dr. Martinez's bronchoscopy results were known to be inconclusive in ruling out cancer. While the movant's expert opines that the patient was obligated to reach out and schedule an appointment himself, Plaintiff's expert counters that Dr. Martinez should have at least attempted to contact the patient, particularly because the doctor had information Decedent did not: that the mass was [*5]suspicious for cancer and further testing would be needed to make a diagnosis if the bronchoscopy was unsuccessful in finding the mass.
As noted by Plaintiff's expert, Dr. Martinez stated in his deposition that if Decedent had presented to his office for a follow-up visit, he would have referred to him to a thoracic surgeon for an open lung biopsy. Dr. Martinez testified "if my results from the bronchoscopy was reported to me as negative . . . I would have sent him to a thoracic surgeon of my confidence that was going to do the biopsy" (Dr. Martinez deposition tr, at 160-162). However, he testified that he relied on the patient to follow up with him for this recommendation (Dr. Martinez second deposition tr, at 94-95). Plaintiff's expert opines that given the doctor "had reason to believe Moises Perez had cancer and [believed] that the biopsy sample he had tried to obtain was insufficient for diagnostic purposes," he had a duty under the standard of care to conduct further referrals or testing, such as a fine needle aspiration or thoracotomy.
The expert also opines that Dr. Martinez had a duty to communicate this information to Plaintiff-administrator Amalia Perez, Decedent's spouse and designated representative, due to the "cognitive deficits noted in his chart." Amalia Perez signed consent forms on his behalf upon his admission, as he was recorded to have forgetfulness and confusion on presentation to FHH. The forms also specifically designated Amalia Perez to participate in discharge planning (see NYSCEF Doc No. 108, at 45). Despite his spouse being designated as a "patient representative" who would participate in discharge planning, Dr. Martinez testified that he did not speak with her about the follow-up appointment plan. Plaintiff's expert opines that Dr. Martinez was required to provide clear information to Decedent's representative on post-discharge plans and information regarding his potential cancer diagnosis.
Plaintiff's expert opines that the departures from Dr. Martinez were a proximate cause of the claimed injuries and wrongful death of Decedent, as his delayed diagnosis ultimately led to the spread and worsening of his cancer. The expert opines that Decedent would have had an "excellent chance at a good recovery" had the mass been found at that time in 2013, rather than progressing to stage four and metastasizing to other areas of his body by the time he was diagnosed in 2015.
Therefore, even if Dr. Martinez had met his prima facie burden, Plaintiff's submissions establish issues of fact as to Dr. Martinez's compliance with the standard of care in communicating with the patient and/or his designated representative. Plaintiff's expert notes that Dr. Martinez had knowledge after reviewing the bronchoscopy results that he missed or had difficulty obtaining a sample of the mass, as he admitted in his deposition. Despite this, he did not inform Decedent of the need for further testing to rule out cancer. The expert raises an issue of fact on whether Dr. Martinez departed from the standard of care by not relaying this information during Decedent's admission or after his discharge, in light of the non-conclusive nature of the pathology results and Dr. Martinez's testimony that he would have referred Decedent for additional testing but relied on the patient to reach out to him. Plaintiff's expert also counters Dr. Newmark with respect to Decedent's alleged cognitive impairment during his admission and the need to inform his designated representative of all pertinent information. There is a clear conflict between the parties' experts on whether the standard of care required further and/or clearer communication about the potential cancerous mass.
Although Dr. Martinez did not establish a prima facie case on proximate causation, as discussed above, Plaintiff's expert addresses the issue in detail regardless, and raises issues of fact as to the movant's acts and omissions and Decedent's delayed diagnosis and poor outcome. [*6]"The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist" (Khutoryanskya v Laser & Microsurgery, P.C., 222 AD3d 633, 635 [2d Dept 2023], quoting Kolivas v Kirchoff, 14 AD3d 493 [2d Dept 2005]). For these reasons, Dr. Martinez's motion for summary judgment is denied.
Turning to the summary judgment motion of FHH (Seq. No. 13), the hospital submits a supplemental expert affirmation from Michael S. Niederman, M.D. ("Dr. Niederman"), a licensed physician certified in pulmonary and critical care. Dr. Niederman also incorporates his affirmation in support of the prior motion, dated March 26, 2019, and relies on records submitted with the prior motion and the new testimony of RN Simpson.
Dr. Niederman opines that there were no departures from the standard of care on the part FHH employees or personnel. Dr. Niederman solely addresses Plaintiff's allegation of direct negligence against FHH in failing to "take steps to ensure [Decedent] received appropriate post-discharge follow-up" after his July-August 2013 admission. Any additional claims or theories of liability in Plaintiff's supplemental bill of particulars, which are the subject of a separate motion to strike and cross motion to amend (Seq. No. 12 & 15). Those claims are not addressed by Dr. Niederman and are not part of the Court's consideration.
Dr. Niederman opines that Decedent was appropriately discharged on August 2, 2013, as his vital signs were stable and initial brushing results from the bronchoscopy were negative. He opines that the patient was "specifically instructed to follow up with Dr. Martinez in one week" for the outstanding biopsy results, based on the discharge plan and discharge instructions in the record. RN Simpson also testified in her deposition that she gave these written instructions to Decedent, and that the hospital's practice was to use the "teach-back" method, going over the discharge instructions orally and having the patient repeat information. Dr. Niederman opines that discharging Decedent with these outpatient follow-up instructions was appropriate, and the standard of care did not require the hospital to "provide a firm date or time" for the follow-up. Dr. Niederman also opines that the hospital had no independent duty to inform him of the bronchoscopy results, or to include his potential cancer diagnosis on the discharge instructions, as those decisions rested with his pulmonologist, Dr. Martinez.
Dr. Niederman further opines that the hospital personnel had no obligation under the standard of care to discuss the discharge instructions with Decedent's spouse/representative. At the time of the 2013 admission Decedent had no reported history of dementia, and in the expert's opinion, Decedent's episodes of "confusion" were a resolved symptom of hyponatremia. The expert notes that he was assessed as awake, alert, and oriented to time and place at the time of his discharge on August 2. Therefore, Dr. Niederman opines that Decedent was not cognitively impaired, and the hospital took all appropriate steps to inform him to follow up with Dr. Martinez within the week.
As an initial matter, FHH's submissions include no discussion of the vicarious liability relationship, if any, between FHH and Dr. Martinez. It is well established that a hospital bears vicarious liability for the actions of employees and for non-employee physicians where the patient sought treatment from the emergency department (see Fuessel v Chin, 179 AD3d 899, 901 [2d Dept 2020]; Muslim v Horizon Med. Group, P.C., 118 AD3d 681 [2d Dept 2014]). A hospital seeking summary judgment must demonstrate that the physician alleged to have committed malpractice was an independent contractor and that no exceptions to the general rule applied. This includes the long-held exception raised by Plaintiff in opposition—physicians [*7]assigned to a patient by the hospital, rather than physicians who were privately treating the patient, regardless of their status as an employee or independent contractor (see Fuessel, citing Mduba v Benedictine Hosp., 52 AD2d 450 [3d Dept 1976]). It is undisputed that Decedent had no prior relationship with Dr. Martinez, and it was FHH who furnished him to the patient as a pulmonary specialist after Decedent sought treatment at the hospital.
Contrary to the movant's contentions in reply, the words "vicarious liability" need not be set forth in Plaintiff's original bill of particulars; a hospital is liable for the acts of its agents, servants, and/or employees under the law (see Rivera v County of Suffolk, 290 AD2d 430, 432 [2d Dept 2002]). The hospital's expert addresses only the independent acts of nursing staff and disregards any acts or omissions of Dr. Martinez. This is notable as FHH's expert attempts to place responsibility for various aspects of discharge planning and communication on Dr. Martinez without any showing that the hospital was not his employer or otherwise liable under Mduba. Therefore, FHH's summary judgment motion must be denied with respect to vicarious liability as to Dr. Martinez.
On the claims of hospital negligence unrelated to Dr. Martinez, FHH's submissions fail to establish that the hospital staff followed the standard of care in providing a post-discharge follow-up plan to the patient, because the opinions of FHH's expert that Decedent was mentally cognizant to receive those instructions is conclusory and based on inconsistencies and disputed facts in the record.
Most notably, the FHH records themselves demonstrate that the Decedent's spouse was designated as his patient representative and signed his consent to admission (NYSCEF Doc No. 108, at 25, 30). Another document on July 30 specifically listed "Amalia Perez" under "Who will participate in your discharge planning?" (id., at 45). Despite this, the discharge plan was signed by Decedent alone (id., at 104), and Plaintiff-administrator was not involved or given the directive to follow up with Dr. Martinez. This discrepancy is never addressed by the movant or the movant's experts.
The expert also bases his opinions on the records showing Decedent was "alert and oriented to time and place," but the expert does not address that he was also noted to be alert and oriented on the date of his admission to the emergency department (id., at 17), and in the nursing assessment where he was also noted to have confusion/forgetfulness and a designated patient representative (id., at 37, 40).
Finally, as already discussed, the testimony from Plaintiff-administrator is unclear and equivocal as to when exactly Decedent's functioning was "back to normal," as she provided this response in answer to a question about follow-up treatment. RN Simpson's testimony that the "teach-back" method was utilized generally for patients does not equate to a showing that he was evaluated as "lucid" and does not clear up any uncertainty as to Decedent's ability to retain the information. For these reasons, the movant also does not establish a prima facie case with respect to the direct claims against the hospital, because the expert's opinions are conclusory and controverted by the evidence.
In opposition, Plaintiff submits the affirmation of a licensed physician certified in internal medicine and pulmonary disease, (name of expert redacted), which addresses both defendants' renewed motions.
With respect to the direct claims against FHH, Plaintiff's expert opines that it was the role of the patient's primary attending physician to integrate the patient's care with specialists and other providers, and that "the hospital's medical providers should take all steps to timely [*8]schedule the necessary and specific appointment(s) with the patient, with a specific time, date, and location." The minimal notation on the discharge paper signed by Decedent to follow up with Dr. Martinez in "1 week" at his "office" with no further information does not comply with this standard. Plaintiff's expert creates at least a material issue of fact as to the standard of care for the hospital to provide a specific follow-up appointment time, date, and location for receiving diagnostic results and further necessary testing and/or treatment.
Furthermore, the hospital's expert places certain responsibilities and duties onto Dr. Martinez, not the hospital staff, including relaying the results of the bronchoscopy or alerting the patient to a potential cancer diagnosis. However, as discussed, the movant never establishes that Dr. Martinez was not an employee, agent, or otherwise a party for whom the hospital is vicariously liable under Mduba.
Even if the hospital had met their prima facie burden as to the alleged failure to provide Decedent with clear post-discharge follow-up instructions, Plaintiff has raised issues of fact which preclude summary judgment as to vicarious liability and direct liability. For these reasons, FHH's application to renew their prior motion for summary judgment is granted to the extent of renewing the motion, and upon renewal, summary judgment is denied.
Accordingly, it is hereby:
ORDERED that Dr. Martinez's motion (Seq. No. 11) for an Order, pursuant to CPLR 3212, granting summary judgment in favor of Dr. Martinez and dismissing Plaintiff's complaint against him in its entirety, or granting summary judgment on any claim and/or theory of liability against Dr. Martinez, is DENIED; and it is further
ORDERED that Forest Hills Hospital's motion (Seq. No. 13) for an Order, pursuant to CPLR 2221 and CPLR 3212, renewing their prior motion and granting summary judgment in the movant's favor on the issues of liability and proximate causation, is GRANTED TO THE EXTENT of renewing the prior motion, and upon renewal, summary judgment is DENIED.
This constitutes the decision and order of this Court.
Dated: June 12, 2024
Hon. Consuelo Mallafre Melendez
J.S.C.

Footnotes

Footnote 1:In opposition to the prior summary judgment motion from Dr. Martinez, Plaintiff had submitted an expert affirmation from Ronald M. Goldenberg, M.D. ("Dr. Goldenberg"), a licensed physician certified in internal medicine and pulmonary medicine. The opinions rendered by Dr. Goldenberg in that affirmation were limited to similar issues discussed in the new affirmation from (redacted physician), i.e., Dr. Martinez's alleged departures in failing to follow up with the patient or adequately communicate that his mass was suspected to be cancerous. As such, those opinions do not need to be restated here.